**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

| | | |
|---|---|---|
| **CAROLYN ENZOR, as Next friend of K.E.** | ) | |
| **and K.E., minors, and JULIANNE** | ) | |
| **GLISSON, as Administrator of the Estate** | ) | |
| **of KA'LA ENZOR,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Civil Action No: 4:22-cv-83** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **THE KROGER CO.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO
EXCLUDE THE TESTIMONY OF KARIM VELLANI</u>**

COMES NOW The Kroger Co. (hereinafter "Kroger") and responds to Plaintiff's Motion
to Exclude the Testimony of Karim Vellani as follows:

**<u>INTRODUCTION</u>**

On April 27, 2021, Ka'La Enzor suffered an unprecedented attack by a third party in the
women's restroom located on Kroger's premises at Berwick Marketplace in Savannah, Georgia.
Kroger had no knowledge of the assailant's presence in the restroom in question despite the
exercise of ordinary care. In fact, Kroger's Front-End Assistant Manager inspected the subject
restroom only minutes before the perpetrator entered the store. A Kroger associate was alone in
that restroom when Ms. Enzor entered, and it was moments after that associate exited the restroom
that the assailant entered and committed his heinous crime. That same associate's quick action led
to Ms. Enzor escaping her attacker before he fled from the premises.

The store is not located in a high crime area. No prior crimes were reported in the store's
restrooms. Importantly, the record lacks evidence of prior similar crimes or other circumstances

1

that would give Kroger reason to anticipate the rape of its customer anywhere on its premises, let alone the women's restroom.

Kroger retained the services of Karim Vellani—a forensic security consultant specializing in crime analysis, security risk assessment, and mitigation for over 28 years—to assess the crime risk at the Kroger store and provide expert testimony regarding Kroger's compliance with its duty to guard against the crime committed. Plaintiffs move the Court to exclude Mr. Vellani's testimony claiming it fails to meet the reliability and helpfulness requirements of Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

Plaintiffs Motion should be denied. It is clear Mr. Vellani's opinions are founded in reliable methodology and would aid the jury in understanding critical evidence.  First, Mr. Vellani thoroughly reviewed the evidence available in this case and conducted his own empirical research into the crime data. Then, drawing upon his extensive experience, training, and education in the field of security management, crime analysis, and forensic security consulting, Mr. Vellani applied an industry-tested and approved methodology to assess the crime risk at the subject store. In arriving at his opinions, Mr. Vellani utilized the FBI Uniform Crime Report ("UCR Methodology") in conducting his analysis, and he followed a peer-reviewed, consensus-based Forensic Methodology published by the International Association of Professional Security Consultants ("IAPSC Forensic Methodology"). This methodology has been accepted in state and federal courts across the country, including, but not limited to:

1. *Childress v Kentucky Oaks Mall*, 2007 WL 2772299 (W.D. KY) 2007.

2. *Reinaldo Robles DelValle, et al v Vornado Realty Trust*, 06-1818USDist.Crt., Puerto Rico, 2009.

3. *Jane Doe v. AE Outfitters Retail Co.,* United States District Court for the District of Maryland, Northern Division, 2015.

Mr. Vellani's opinions concerning crime risk and Kroger's security measures are the product of reliable principles and methods that are reliably applied to the facts of this case. Based on his analysis, Mr. Vellani arrived at the following opinions germane to this case:

> In light of the crime risk, Kroger 645 had a reasonable security program which consisted of a multi-pronged approach to mitigating risk. Defendants met the applicable standard of care relating to security.

Mr. Vellani's opinions concerning the crime risk and Kroger's security measures are sufficiently reliable and will aid the jury in understanding the evidence presented at trial. Therefore, Plaintiffs' Motion must be denied.[1]

## ARGUMENT AND CITATION OF AUTHORITY

## I.    LAW APPLICABLE TO ADMISSIBILITY OF EXPERT TESTIMONY

A qualified expert witness may testify at trial if the following conditions are met:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and,
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The district court serves as gatekeeper and decides whether an expert's testimony satisfies the requirements of Rule 702. *Daubert*, 509 U.S. at 589; Quiet Tech. DC-8,

---

[1] Plaintiffs insinuate that Mr. Vellani's opinions in this case are unreliable based on a verdict rendered in an unrelated case. (Doc. 31, p. 3). Plaintiffs incorrectly state that a "Dekalb jury disagreed with Mr. Vellani's opinion." (*Id.*). However, Mr. Vellani did *not* testify at the trial of that case, and the jury never heard his opinion. Thus, the DeKalb jury could not have disagreed with Mr. Vellani because Mr. Vellani was not presented as a witness at the trial of the case. Plaintiff's assertion that a Dekalb jury disagreed with Mr. Vellani's opinion is incorrect, irrelevant to the issue before the Court, and without merit.

Inc. v. Hurel-Dubois UK Ltd., 236 F. 3d 1333, 1340 (11th Cir. 2003). The party offering the expert has the "burden of laying the proper foundation for the admission of the expert testimony…, and admissibility must be shown by a preponderance of the evidence. *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999).

Expert testimony must meet three requirements to be admissible: (1) "the expert must be qualified to testify competently"; (2) "the methodology must be reliable as determined by a *Daubert* inquiry" and (3) "the testimony must assist the jury through application of expertise to understand the evidence or determine a fact in issue." *Kilpatrick v. Breg, Inc*. 63 F.3d 1335 (11th Cir. 2010).

In the instant case, Plaintiffs do not challenge Mr. Vellani's qualifications as an expert. Instead, Plaintiffs question the reliability and helpfulness of Mr. Vellani's opinion. Plaintiffs' arguments for exclusion of Mr. Vellani's testimony are matters properly reserved for cross-examination or presentation of contrary evidence at trial and not a proper basis for exclusion of the testimony. For this reason, and as further explained below, Plaintiffs' objections to Mr. Vellani's testimony lack merit.

## II.   VELLANI'S OPINION IS RELIABLE ACCORDING TO RULE 702 AND *DAUBERT*

An expert's reliability is determined by asking (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the scientific technique; and (4) whether the technique is generally accepted in the scientific community. *Frazier v. Se. Ga. Health Sys.,* 2023 U.S. Dist. LEXIS 108180, *5-6, *citing Daubert*, 509 U.S. at 593-94. However, additional factors can and should be considered if they "advance [the court's] Rule 702 analysis." *Quiet Tech.*, 326 F.3d at 1341. "At all times in this flexible inquiry, the court's focus must be solely on principles and

methodology, not on the conclusions that they generate." *Frazier*, *6, *quoting Seamon v. Remington Arms Co.*, LLC, 813 F.3d 983, 988 (11th Cir. 2016) (internal punctuation omitted).

**A. Mr. Vellani's opinion on crime risk was formed using a valid, reliable, peer-reviewed, and consensus based forensic methodology and is therefore admissible at trial.**

As an initial matter, Plaintiffs completely misstate the methodology used by Mr. Vellani in forming his opinion. Plaintiffs insist that "Mr. Vellani employs a strict methodology that only considers prior, identical crimes that occurred in the exact location of Ms. Enzor's attack (the Kroger restroom) to develop his risk assessment." (Doc. 31 at p. 4). Later, Plaintiffs maintain that "Mr. Vellani limited his risk analysis solely to consideration of prior crimes that occurred within the Berwick Kroger restroom contrary to Georgia law." (Doc. 31, p. 7). These statements are simply not true and are contradicted by Mr. Vellani's report and deposition testimony.

In fact, Mr. Vellani reviewed information regarding *all* Actual and Inherent Threats, as defined by the IAPSC Forensic Methodology he utilized to form his opinion. In connection with "Actual Threats," which is the crime history at the property derived from actual crime data, Mr. Vellani analyzed over 80 reported crimes occurring at or near the subject store in the preceding three (3) years. (Vellani Report, pp. 14-17). Mr. Vellani also considered the "Inherent Threats" as required by the IAPSC Forensic Methodology, assessing "the crime risk at the subject property as determined by the expert based on the property's characteristics, the expert's research and/or experience in similar environments, information gathered through the discovery process and/or a site inspection (if conducted)." (*Id.*, p. 18). This analysis led Mr. Vellani to conclude that rapes are *not an inherent threat in grocery stores*. (*Id.*) (emphasis added). Thus, Plaintiffs' argument that the methodology only factored "prior identical crimes that occurred in the exact location of the attack" is wrong.

All of the crime data obtained directly from law enforcement was *considered* and used to calculate the crime risk upon which Mr. Vellani based his opinions. (*Id*., p. 14-17). The crime data was certainly "relevant" to that analysis. However, Mr. Vellani plainly stated that the crime data he analyzed did not inform Kroger of a crime risk in the restrooms where this incident occurred. Plaintiffs attempt to discredit Mr. Vellani's crime risk analysis arguing that he "intentionally limits the subject area to the Kroger store (excluding the parking lot and shopping center)." (Doc. 31, p. 9). Again, Plaintiffs either misunderstand or misconstrue the "Analysis of Crime at Kroger 645" section of Mr. Vellani's Report. (Vellani Report, pp.14-18). Mr. Vellani used *all crimes reported*, regardless of where they occurred: "I looked at the totality of where the threats are occurring at the Kroger store and what the nature of those threats were." (Exhibit A, p. 58)

Plaintiffs also fault Mr. Vellani's crime risk analysis based on the unavailability of certain crime data for the years 2019 and 2020. As Mr. Vellani explained in his deposition, Chatham County did not report its crime data to the Federal Bureau of Investigation's Uniform Crime Report ("UCR") program for those years. (Exhibit A, pp. 139-140). Consequently, the FBI data for those two years did not exist and could not be used for the crime risk analysis, which would have been his preference. Instead, Mr. Vellani utilized other crime data for Kroger and the surrounding area for the years 2019 and 2020 which he obtained directly from Chatham County. (Exhibit A, pp. 140-141).

Mr. Vellani's crime risk analysis was based on the application of Mr. Vellani's specialized knowledge, experience, and training in the use of the UCR Methodology and application of the IAPSC Forensic Methodology and in forming his opinions. Further, Mr. Vellani conducted independent empirical research to document and support his opinion, the references to which are contained in the footnotes of his Report and supplied in response to the documents requested in

connection with his deposition. It is clear from Mr. Vellani's Report and his deposition testimony that his opinion is based on sufficient facts, is the product of reliable principles and methods, and is the product of his reliable application thereof to the facts of the case. In short, Mr. Vellani's testimony is reliable based on a *Daubert* inquiry.

Plaintiffs insist that Mr. Vellani's analysis is contrary to the Georgia Supreme Court's recent adoption of a "totality of the circumstances" test for assessing the foreseeability of the type of criminal activity at issue in the litigation, which in the case at bar is the rape of a customer in the women's restroom by a third-party assailant. *See Georgia CVS Pharmacy, LLC v. Carmichael*, 2023 WL 4247591, 2023 Ga. LEXIS 141 (Ga. June 29, 2023). In taking this position, Plaintiffs ignore the fact that Mr. Vellani conducted a totality of the circumstances analysis, as mandated by the IAPSC Forensic Methodology he followed, analyzing actual and inherent threats.[2] (Doc. 31, at Exhibit G (referred to throughout as "Vellani Report"), p. 14-18 and Appendix B, p. 4).

In analyzing the crime risk at this Kroger store according to the UCR Methodology and IAPSC Forensic Methodology, Mr. Vellani used four factors – similarity, frequency, recency, and proximity, as well as additional guidance from industry accepted practices and government sources to form his opinions. (Vellani Report, p. 6; Exhibit A, pp. 130-145). Contrary to Plaintiffs'

---

[2] At Mr. Vellani's deposition, Plaintiffs' counsel inquired about a "totality of circumstances approach" in the context of a security risk assessment, specifically the threat assessment component of a security risk assessment. (Vellani Depo. pp. 51-57) Mr. Vellani testified to his understanding that "totality of the circumstances" is a legal standard employed by some jurisdictions, and which the Georgia Supreme Court adopted *after* Mr. Vellani's deposition. (*Id.*). The risk analysis performed by Mr. Vellani analyzed "Actual Threats" (defined as "the crime history at the subject property based on data reflecting actual crime data…. Actual threats are a quantitative element of a threat assessment.") to determine the complete crime history of the property and to determine if substantially similar crimes occurred on the property. (Vellani Report., p. 14-18). Mr. Vellani performed a calculation of the crime risk specific to the store and a comparison to a broader area using the crimes data. (*Id.*) Mr. Vellani's risk analysis also included an analysis of "Inherent Threats." (*Id.*). The Inherent Threats analysis considered the characteristics of the business and physical layout of the store (based on video review), independent research, and experience in similar environments. (*Id.*, p. 18). From that analysis, Mr. Vellani concluded that rapes are not an Inherent Threat in grocery stores like this Kroger. (*Id.*). Taken together, the Actual Threat assessment and the Inherent Threat assessment is a totality of the circumstances analysis. Further, Mr. Vellani's analysis of crime is to provide context to the security risk assessment he conducted while developing his opinions.

assertion, Mr. Vellani "looked at the totality of where the threats were occurring at the Kroger store and what the nature of those threats were." (Exhibit A, p. 58). Mr. Vellani found "nothing instructive in any of the crime data or any of [Kroger's] internal reporting or any of the security matrix that would inform me that there was a problem in the bathroom." (*Id.*).

Based on his totality of the circumstances analysis, Mr. Vellani concludes that the evidence he reviewed did not inform Kroger of the potential for the type of crime at issue in this case and was not "instructive of a bathroom issue." [3] (Exhibit A, 153). Mr. Vellani testified that the risk assessment requires you to "dig down deeper into [the crimes] and the unique nature of th[e] crime," and while he considered many of the crimes *categorically* similar according to the the UCR Methodology, the totality of circumstances analysis requires you to "understand the crime problem." (Exhibit A, pp. 130-131). By way of example, Mr. Vellani testified that incidents occurring in the parking lot, whether due to road rage or a fight over a parking spot, do not inform or suggest a risk of crime in the bathroom inside the Kroger store. (Exhibit A, p. 60).

Plaintiffs insist Mr. Vellani reached a "desired opinion based upon pure conjecture by his omission of prior crimes at and surrounding the Berwick Kroger." (Doc. 31, p. 8) Plaintiffs also claim incorrectly that Mr. Vellani decided the crime data was "not relevant to his analysis because they did not occur in the Berwick Kroger restroom." (Doc. 31, p. 8) In fact, Mr. Vellani testified repeatedly that he considered all crime data and that data led to his conclusion that those crimes did not inform Kroger of the potential for the rape of a customer inside the women's restroom. (Exhibit A, p. 58, 60, 154, 155).

---

[3] The crime data included over 80 reports of crimes allegedly occurring at or near the shopping center where the subject Kroger is located. In addition, Mr. Vellani specifically reviewed and considered the additional purported crimes highlighted on pp. 8-9 of the instant Motion, all of which were contained within the materials reviewed by Mr. Vellani and produced to Plaintiffs in response to the Notice of Deposition. All of the crime data and Kroger's internal reports for the relevant period were used for the analysis of the crime risk at the subject store. (See, Vellani Report, p. 14).

Plaintiffs' entire argument purporting to challenge the reliability of Mr. Vellani's opinion is one properly handled at trial through cross examination, and not by a motion to exclude his testimony.[4] *See United States v. 0.161 Acres of Land*, 837 F.2d 1036, 1040 (11th Cir. 1988) ("[W]here the expert testimony has a reasonable factual basis, a court should not exclude it. Rather, it is for opposing counsel to inquire into the expert's factual basis."); *McGarity v. FM Carriers, Inc.*, 2012 U.S. Dist. LEXIS 41356, *21 (S.D. Ga. Mar. 26, 2012) (citing *Daubert*, 509 U.S. at 596; Quiet Tech., 326 F.3d 1333, 1345-46 (11th Cir. 2003) ("[T]he identification of flawed data or facts relied upon by an expert is precisely the role of cross-examination."). Mr. Vellani's testimony meets the reliability requirement of Rule 702 and *Daubert* and should not be excluded.

## B. The evidence supports Mr. Vellani's opinion concerning Berwick Kroger's reasonable security plan at the time of Ms. Enzor's attack.

In addition to Mr. Vellani's crime risk analysis, he conducted an "assessment of inherent threats as required by the IAPSC Forensic Methodology. Inherent threats consider 'the crime risk at the subject property as determined by the expert based on the property's characteristics, the expert's research and/or experience in similar environments, information gathered through the discovery process, and/or a site inspection (if conducted)." (Vellani Report, p. 18).

Plaintiffs suggest that the lack of a site inspection renders Mr. Vellani's opinion unreliable; however, there is no basis for this argument. The IAPSC Forensic Methodology used by Mr. Vellani expressly contemplates that a site inspection is not mandatory for completing the Inherent

---

[4] Plaintiffs repeatedly conflate the *Daubert* reliability inquiry with a challenge to the weight and credibility of Mr. Vellani's opinion. One such example centers on the exchange during Mr. Vellani's deposition over language contained in one of several books he authored. (Doc. 31, p. 7). Plaintiffs take issue with Mr. Vellani's effort to distinguish the application of the passage cited, which addresses use of the totality of the circumstances standard applied to determine a premises owner's duty in negligent security cases, as compared to a totality of circumstances approach to conducting a formal "risk assessment." (*Id.* at 8). The proper place for a challenge based on an *allegedly* prior inconsistent statement – which this is not - is on cross-examination at trial, and not in a motion to exclude the testimony. Similarly, Plaintiffs' challenge the Crime Rate calculation performed by Mr. Vellani based on the absence of crime data for 2019 and 2020 in the UCR database maintained by the FBI. (Doc. 31, p 9). Here again, this challenge goes to the weight and credibility of the calculation, not the admissibility of the opinion formed based on that calculation.

Threat analysis. (Vellani Report, p. 4; Exhibit A, p. 80). Mr. Vellani testified that currently available technology often eliminates the need for a physical site inspection for completion of a vulnerability assessment (Exhibit A, pp. 49-50).

In this case, Mr. Vellani analyzed surveillance videos from multiple Kroger cameras, which permitted him to see the location and layout of the bathrooms, as well as the entrance to the store, on the date of the incident. (Vellani Report, pp. 4-5). Mr. Vellani also reviewed a video walk through of the store performed on September 9, 2022, documenting the layout of the store from the entrance to the scene of the attack at issue in the case. (*Id.*). In addition, Mr. Vellani conducted an interview of, and reviewed the deposition testimony provided by, Kroger's designated agent, Scotlon Hughes, who explained Kroger's policies and procedures for security and assessing potential crime risks on its premises. (Vellani Report, p. 5; and see generally, 30(b)(6) Deposition of Kroger by Scotlon Hughes at Doc. 36, p. 28-144).

Plaintiffs claim that Mr. Vellani fails to identify any real security measures utilized by Kroger is also incorrect. Plaintiffs focus solely on the perceived lack of "security personnel" at the time of Ms. Enzor's attack. This claim fails to acknowledge that "security measures" encompass more than just "security personnel" and includes policies, procedures, protocols, methods, physical security (not just security officers) and employees. (Vellani Report, pp. 4-5).

After reviewing Kroger's policies, procedures, Risk Matrix, and after interviewing and reviewing the deposition of Kroger's Division Asset Protection/Safety Manager, Scotlon Hughes, Mr. Vellani concludes that the store "had a reasonable security program which consisted of a multi-pronged approach to mitigating risk." (Vellani Report, p. 19). Indeed, the most important of those security measures is Kroger's associates who serve as "eyes and ears of the store" meaning "see something, say something." (Exhibit A, p. 88). It was exactly this security measure that led to

Kroger's almost immediate detection of the crime in progress and the store's prompt response that enabled Ms. Enzor to escape the assailant.

Plaintiffs selectively focus on the absence of designated security personnel to attack the reliability of Mr. Vellani's opinion, while ignoring the evidence of the store's many security measures: access control, video surveillance, electronic article surveillance, parking lot lighting, buggy locks, and employee training on issues such as active assailants, general security training, and reporting requirements. (Vellani Report, p. 20). Mr. Vellani notes that Kroger managers receive enhanced Asset Protection and Safety training through Management Training. (Vellani Report, p. 20).

Plaintiffs further attack the reliability of Mr. Vellani's opinion based on their perceived flaws in Kroger's Security Matrix and Loss Prevention Management System ("LPMS"), two of the tools Kroger uses to identify crime risks at its stores. The Security Matrix utilizes multiple data points to assist Kroger in allocating security resources. Plaintiffs conveniently omit the fact that in addition to reliance on the CAP Index[5], Kroger's internal LPMS and "shrink" data, the Kroger Security Matrix also relies on direct, subjective input from Kroger's Division Asset Protection team to assess a store's risk for crime and the ultimate allocation of resources. (Vellani Report, p. 19).

Here, as above, Plaintiffs' reliability challenge is not a properly framed *Daubert* inquiry. Rather, questions over allegedly contradictory testimony offered by Kroger employees, the data used to calculate the Kroger Security Risk Matrix, and perceived flaws in Kroger's LPMS all go to the weight and credibility of the opinion, not its admissibility. The Eleventh Circuit cautions that a *Daubert* inquiry "is not intended to supplant the adversary system or the role of the jury."

---

[5] CAP Index Reports provide crime risk data for locations looking at an area's demographics. (https://capindex.com/how-we-help/crimecast-data-reports/)

*Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001), *quoting Allison v. McGhan Med. Corp*., 184 F.3d 1300, 1311 (11th Cir. 1999). Instead, "vigorous cross-examination, presentation of contrary evidence and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir. 2004), *quoting Daubert*, 509 U.S. at 596. Plaintiffs' concern that Mr. Vellani's opinion "relies so heavily on this unreliable data" is a matter properly addressed through cross-examination at trial and with presentation of contrary evidence. (Doc. 31, p. 13). Mr. Vellani's testimony concerning Kroger's security measures meets the reliability requirements of Rule 702 and *Daubert*.

### III.   VELLANI'S OPINION MEETS THE HELPFULNESS REQUIREMENT OF RULE 702 AND *DAUBERT*

Plaintiffs also challenge the admissibility of Mr. Vellani's testimony by insisting that it fails the helpfulness test. Plaintiffs reassert their argument that Mr. Vellani's opinion is inadmissible because it is based on "unreliable" data used by Kroger in its Security Risk Matrix. (Doc. 31, p. 14) However, as noted above, this is a matter properly left for cross examination and presentation of contrary evidence, and not a proper gatekeeping function for the Court. *See Adams v. Lab. Corp. of Am*. 760 F.3d 1322, 1344 (11 Cir. 2014) ("We have repeatedly stressed *Daubert's* teaching that the gatekeeping function under Rule 702 is not intended to supplant the adversary system or the role of the jury.").

To satisfy *Daubert's* helpfulness requirement, "the testimony must concern matters beyond the understanding of the average lay person and logically advance a material aspect of the proponent's case." *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty.,* 402 F.3d 1092, 1113 (11th Cir. 2005). In other words, the court should only exclude testimony that is irrelevant and confusing to the jury but should admit testimony that will assist the jury in determining an issue in the case. Where the challenge goes to weight and credibility because of allegedly flawed data or

facts, the matter is one properly addressed through cross-examination. McGarity, supra, 2012 U.S. Dist. LEXIS 41356, at *15, *citing Daubert*, 509 U.S. at 596.

In the instant case, the jury may be required to determine if the heinous and unprecedented attack on Ms. Enzor was foreseeable, giving rise to Kroger's duty to exercise ordinary care to protect its customers *from such conduct*. *See Carmichael*, 2023 WL 4247591 at *4 (emphasis added). If the jury were to conclude this particular crime was foreseeable, triggering Kroger's duty, then the jury must next address whether Kroger breached that duty. This requires an analysis of the applicable standard of care applicable to Kroger and similarly situated premises.

Mr.  Vellani opines that Kroger's security measures met the industry standard required of grocery stores. Importantly, there is no mandate that grocery stores employ designated security personnel, which Plaintiffs insinuate violates a standard of care. (Doc. 31, p. 10). The average layperson will benefit from expert review of (1) the types of security measures available to address crime risks, (2) whether such security measures are mandated as opposed to optional, and (3) the feasibility of those measures. Importantly, the jury must be educated about the efficacy, or lack thereof, of various security measures as a means of preventing *this particular crime*. See *Carmichael, supra*, 2023 Ga. LEXIS 141, at *10 ("the factfinder must weigh the likelihood and severity of the foreseeable harm against the cost and feasibility of additional security measures in considering whether the duty owed was breached.")

Mr. Vellani's opinion is based on methods generally accepted in the security community, and utilizes reasoning based on an industry approved methodology. The opinion applies the methodology to the available evidence, and is properly grounded, well-reasoned and not speculative. "Rule 702 does not bar an expert from drawing conclusions in a specific case . . . [and] does not require that any inferences from the facts in the specific case be left to the jury." *Frazier*,

387 F.3d at 1294 (citing *United States v. Boney*, 298 U.S. App. D.C. 149, 977 F.2d 624, 629 (D.C. Cir. 1992). "[E]xperts may 'take the further step of suggesting the inference which should be drawn from applying the specialized knowledge to the facts.'" *Id*. (citation omitted). "This is true even if the testimony merely assists the jury in interpreting the significance of the evidence, draws on common sense, or, while helpful, is nonetheless obvious." *Id*. (citations omitted). "[W]hether the specific expert testimony focuses upon specialized observations, the specialized translation of those observations into theory, a specialized theory itself, or the application of such a theory in a particular case, the expert's testimony often will rest 'upon an experience confessedly foreign in kind to [the jury's] own.'" *Id*. (citing *Kumho Tire Co.*, 526 U.S. at 149.) Mr. Vellani's testimony concerning his crime risk analysis, application of his methodology and interpreting the evidence is helpful to the jury.

Concerning Kroger's Security Matrix, and the reliability of the LPMS data and CAP Index reports it utilizes, Mr. Vellani's testimony will certainly be helpful to the jury. Specifically, Mr. Vellani will be able to explain through the application of his specialized knowledge of the use of Crimecast's CAP Index reports, the data obtained, and how widely used the reports are with similar retail establishments. In addition, his experience and knowledge concerning an organization's internal reporting system, categorization of data, and observations concerning potential issues with the internal reporting system as to Kroger and other similarly situated companies will be informative to the jury.

Lastly, the jury will undoubtedly benefit from Mr. Vellani's expertise in determining whether Kroger complied with the duty imposed by Georgia law requiring proprietors to exercise ordinary care in keeping the premises safe. O.C.G.A. § 51-3-1; see *Carmichael*, 2023 Ga. LEXIS

141; *Lau's Corp.*, 261 Ga. at 492; see also *Martin v. Six Flags Over Georgia II, L.P.*, 301 Ga. 323, 328 (II), 801 S.E.2d 24 (2017).[6]

Mr. Vellani's testimony streamlines the jury's ability to understand industry specific information concerning standards of care to better assess the duty owed and any breach thereof allegedly committed by Kroger. This testimony is relevant and helpful to the jury.

**IV.     CONCLUSION**

Given Mr. Vellani's thorough evaluation of the evidence, and his extensive experience, training and education in the field of security management, crime analysis, and forensic security consulting, he researched and analyzed material consistently with the Uniform Crime Reporting methodology to assess the crime risk and the Forensic Methodology approach in forming his opinion. His testimony concerning crime risk and Kroger's security measures were the product of reliable principles and methods that were reliably applied to the facts of this case. Mr. Vellani's opinions concerning crime risk and Kroger's security measures go to the heart of the case: standard of care and negligence. Mr. Vellani's testimony is both reliable and helpful to the trier of fact. Plaintiff's Motion must, therefore, be denied.

This 31st day of July, 2023.

                                                          **LUEDER, LARKIN & HUNTER, LLC**

                                              By:     /s/ **BEVERLY G. O'HEARN**
7 E. Congress Street, Suite 712                 **BEVERLY G. O'HEARN**
Savannah, Georgia 31401                         Georgia Bar No. 287650
(912) 712-2740 (Phone and Fax)                  **ALISON N. MAHER**
bohearn@luederlaw.com                           Georgia Bar No. 889530
amaher@luederlaw.com                            **ATTORNEYS FOR THE KROGER CO.**

---

[6] Plaintiffs take issue with Mr. Vellani's testimony regarding the impact of voluntary adoption of standards of care promulgated by a specific organization and whether those recommendations are controlling under the circumstances. (Doc. 31, p. 14-15). Plaintiff's own proffered expert, David Benson, agrees with Mr. Vellani that there is no requirement that Kroger rely on or adopt a standard, such as the American National Standard on Workplace Violence and Intervention, confirming it is voluntary and not a legally enforceable standard. (Exhibit "B," Deposition of David Benson, 67-68).

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a true copy of the foregoing **Defendant's Opposition to Plaintiff's Motion to Exclude the Testimony of Karim Vellani** has been served on parties in this case in accordance with the directives from the Court Notice of Electronic Filing ("NEF") which was generated as a result of electronic filing.

John B. Manly                          Richard Sanders
James E. Shipley, Jr.              Andrews & Sanders
Manly Shipley, LLP               327 West York Street
P.O. Box 10840                     Savannah, Georgia 31401
Savannah, Georgia 31412

john@manlyshipley.com       richard@andrews-sanders.com
jim@manlyshipley.com
erin@manlyshipley.com

*Attorneys for Plaintiff*          *Attorneys for Plaintiff*

This 31st day of July, 2023.

                                            **LUEDER, LARKIN & HUNTER, LLC**

                              By:      /s/ **BEVERLY G. O'HEARN**_____
                                            **BEVERLY G. O'HEARN**
                                            Georgia Bar No. 287650
                                            **ALISON N. MAHER**
                                            Georgia Bar No. 889530
                                            **ATTORNEYS FOR THE KROGER CO.**

7 E. Congress Street, Suite 712
Savannah, Georgia 31401
(912) 712-2740 (Phone and Fax)
bohearn@luederlaw.com